HANNER, Jr., and others *v.* MOULTON and others.

(*Circuit Court, N. D. Texas.* January Term, 1885.)

WILL.—INTENTION—EXTRINSIC EVIDENCE—LATENT AMBIGUITY.

> A will contained the following devise: "I will to J. W. H., Jr., J. P., and J. P., Jr., my tract of land, containing near 1,500 acres first-rate land, lying, I believe, in Ellis county, Texas." At the date of his will, and at the time of his death, the testator was the owner of a head-right certificate for 1,476 acres, but he never owned any land whatever in Ellis county, and he never owned any lands elsewhere in Texas to which the devise applied. *Held,* that parol evidence was not admissible to show that the testator supposed that such certificate had been located in Ellis county, making him the owner of the lands covered thereby, or that it was his intention, as shown by his declarations and conversations, to devise this certificate, if it should turn out that it had not been located, and that he was advised by the attorney who wrote the will that the devise would be effectual to carry out such purpose.

In Equity. Final hearing upon pleadings and evidence.

*John L. Henry* and *John D. Park,* for plaintiffs.

*Sawnie Robertson,* for defendants.

Before WOODS and McCORMICK, JJ.

WOODS, Justice. The bill was filed January 27, 1882, for a decree to establish the title of the plaintiffs to several tracts of land in the state of Texas; one of 586 acres in Ellis county; one of 640 acres in Falls county; and one of 250 acres in Clay county, and to declare that the deeds under which the defendants claimed title to said lands were null and void. The plaintiffs asserted title to the lands, as devisees under the will of James Park, deceased, who died September 4, 1866, at his domicile, in the county of Williamson, in the state of Tennessee. The devise under which the plaintiffs claimed title was in these words:

"I will to John W. Hanner, Jr., James Park, and John Park, Jr., my tract of land, containing near fifteen hundred acres first-rate land, lying, I believe, in Ellis county, Texas. My papers are in the hands of J. A. N. Murray and W. H. Gill, of Clarksville, Texas, who must account for all papers of mine in the hands of Wm. A. Park's widow at his death."

The testator did not, at the date of his will or at his death, own any lands in Ellis county, Texas, nor did he, as the plaintiffs insisted, own any lands in any other county of Texas to which said devise referred. But the testator, at his death, was the owner of a head-right certificate for one-third of a league of land—1,476 acres—issued in the year 1838 by the republic of Texas to one William H. Ewing, which was transferred by Ewing to him by deed dated April 9, 1846. C. R. Johns, one of the defendants, having been, in July, 1867, appointed by the probate court of Travis county, in the state of Texas, administrator, with the will annexed, of the estate of James Park, the testator, by order of the same probate court, sold, at public sale, in April, 1869, for $110.70, the head-right certificate above mentioned, shown

to be worth about $200, to J. C. Kerbey, another of the defendants. Kerbey afterwards located the certificate on the several tracts of land in Ellis, Falls, and Clay counties.

The charge of the bill was that all the proceedings of Johns in the probate court of Travis county by which he obtained the order for the sale of the certificate, and the sale itself, were fraudulent; that Kerbey had knowledge of and participated in the fraud; and that the other defendants who were in possession of said lands, claiming title thereto under Kerbey, bought with notice of the fraud. Upon the trial of the case the plaintiffs, conceding that the testator at his death owned no land in Ellis county, or elsewhere in Texas, to which said devise referred, to prevent the devise from being inoperative, and to prove their title to the lands in question, offered evidence tending to show that the testator, when he executed his will, and at the time of his death, believed that the Ewing head-right certificate had been located in Ellis county, making him the owner of the lands covered thereby; that it was the purpose of the testator, shown by his declarations to and conversations with the witnesses, to devise to the plaintiffs the Ewing certificate if it should turn out that it had not been located; and that he was advised by the lawyer who drew his will that the devise above quoted would be effectual to carry out such purpose. The contention of the plaintiffs was that if this evidence was admitted, it would show them to be the owners of the Ewing head-right certificate under the devise in the will of James Park, and establish their title to the lands located by Kerbey under that certificate.

It is evident that the title of the plaintiffs to the relief prayed by their bill depends upon the admissibility of this evidence. The defendants object to the testimony. I am of opinion that the objection is well taken, and that the evidence should be excluded.

It has been held by the supreme court of Texas that head-right certificates, like that which it is alleged the testator owned, are personal and not real estate. *Randon* v. *Barton,* 4 Tex. 289; *Johnson* v. *Newman,* 43 Tex. 628; *Porter* v. *Burnett,* 60 Tex. 222. The offer of the plaintiffs is to show by extrinsic evidence the intention of the testator, in case the Ewing head-right certificate had not been located, to bequeath it to them in lieu of the land devised to them by his will; thus, by parol evidence, changing a devise of land to a bequest of personal property. The admission of this evidence would, in my judgment, be in violation of the established rules of the law of evidence relating to the subject. The rules for the admission and exclusion of parol evidence are the same in respect to wills as to contracts in writing generally. *Doe* v. *Martin,* 4 Barn. & Adol. 771; *Holsten* v. *Jumpson,* 4 Esp. 189; *Brown* v. *Thorndike,* 15 Pick. 400; *Lancey* v. *Phœnix Ins. Co.* 56 Me. 562; Cruise, Dig. (Greenl. Ed.) tit. 38, c. 9, §§ 1–15, inclusive; 2 Powell, Dev. (Jarman's Ed.) 5–11. They are the same in courts of equity as in courts of law. *Bertie* v. *Falkland,* 1 Salk. 231; *Towes* v. *Moor,* 2 Vern. 98; *Bennet* v. *Davis,* 2 P. Wms. 316;

*Ware* v. *Cowles*, 24 Ala. 446; *Forsythe* v. *Kimball*, 91 U. S. 291; *Hunt* v. *White*, 24 Tex. 643.

The rule on the subject under consideration has been thus stated: "Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." *Adams* v. *Wordley*, 1 Mees. & W. 379, 380; *Boorman* v. *Jenkins*, 12 Wend. 573; *Lazare's Ex'rs* v. *Peytavin*, 4 Mart. (La.) 684; 1 Greenl. Ev. § 275. As applied to wills, the rule is thus stated in 2 Powell, Dev. (Jarman's Ed.) 5–11: "Extrinsic evidence is not admissible to alter, detract from, or add to the terms of a will, though it may be used to rebut a resulting trust attaching to a legal title created by it."

The writing, if it be a contract, may be read in the light of the surrounding circumstances in order more perfectly to understand the meaning of the parties. If it be a will, the circumstances under which the testator executed it, or the state of his property, his family, and the like may be shown in order to throw light upon his intention, as expressed by the words used in the will. 1 Greenl. Ev. 277; 2 Powell, Dev. pp. 5–11, rule 8; *Hunt* v. *White*, 24 Tex. 643. But in both cases, as the writing is the only outward and visible expression of the meaning of the party or parties to it, no other words are to be added to it, or substituted for those used. "The duty of the court in such cases is to ascertain, not what the parties may have secretly intended as contradistinguished from what their words expressed, but what is the meaning of the words they have used." Greenl. Ev. § 277; *Doe* v. *Gwillim*, 5 Barn. & Adol. 122, 129; *Doe* v. *Martin*, 4 Barn. & Adol. 771–786; *Beaumont* v. *Field*, 2 Chit. 275.

In *Hunt* v. *White, ubi supra*, the rule was expressed, in substance, as follows: "The intent of the testator must be ascertained from the meaning of the words used in the will, and those words alone; but extrinsic evidence is admissible of such facts and circumstances as will enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts of the case.

A distinguished writer lays down the rule of law upon this subject, as applicable to wills, as follows:

"As the law requires wills, both of real and personal estate to be in writing, it cannot consistently with this doctrine permit parol evidence to be adduced to contradict, add to, or explain the contents of such will; and the principle of this rule evidently demands an inflexible adherence to it, even when the consequence is the partial or total failure of the testator's intended disposition; for it would have been of little avail to require that a will *ab origine* should be in writing, or to fence a testator round with a guard of attesting witnesses, if, when the written instrument failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied, or its inaccuracies corrected from extrinsic sources." 1 Jarm. Wills, 409.

This exposition of the law is sustained by a large array of authorities cited in the notes. This rule was applied by the supreme court of the United States in the case of *Mackie* v. *Story*, 93 U. S. 589. The

question in that case was whether the whole legacy bequeathed by a will to two brothers accrued to Benjamin Story, the survivor, or whether one-half of it did so, leaving the deceased intestate as to the other half. On the trial the children of Henry C. Story offered parol evidence to show the good will and affection of the deceased towards him for the purpose of demonstrating the intention of the testator in the bequest. The court ruled that the evidence was properly rejected; Mr. Justice BRADLEY, who delivered the judgment of the court, remarking: "The paper must speak for itself, and its meaning and effect be ascertained by the court."

The rule is further illustrated and sustained by the following authorities: In *Brown* v. *Selwin*, Cas. t. Talb. 240, the testator bequeathed the residue of his personal estate to two persons, whom he appointed his executors, and one of whom was indebted to him by bond. It was attempted to be proved by the evidence of the person who drew the will that he received the testator's written instructions to release the bond debt by the will, but that he refused to do so under the impression that the appointment of the obligor to be one of the executors extinguished the debt. Lord TALBOT held the evidence to be inadmissible, and his decree was affirmed on appeal by the house of lords. In *Strode* v. *Lady Falkland*, 3 Ch. Cas. 90, letters and oral declarations of the testator being offered to prove the intention to include a revision in the words "all other, my lands, tenements, and hereditaments out of settlement," it was unanimously agreed that this kind of evidence could not be admitted, for that, where a will was doubtful and uncertain, it must receive its construction from the words of the will itself, and no parol proof or declaration ought to be admitted out of the will to ascertain it. So, in *Mann* v. *Mann*, 14 Johns. 1, it was held that where a testator bequeathed to his wife "all the rest, residue, and remainder of the moneys belonging to his estate at the time of his decease," the word "moneys" did not comprehend bonds, mortgages, or other choses in action, and that the declarations of the testator to show a different intent were inadmissible. In the case of *Jackson* v. *Sill*, 11 Johns. 201, G. devised as follows: "I give and bequeath to my beloved wife, for and during her widowhood, the farm which I now occupy, with the whole of the crops of every description which may be thereon at the time of my death," etc., and after the remarriage or death of his wife, he devised the same to S. and his heirs. It was held that extrinsic or parol evidence to show that the testator intended to devise the whole of his real estate at W., which included a farm of 90 acres in the tenure of B., under a lease from the testator for seven years, and that he gave such instructions to the attorney who drew the will, was inadmissible, there being no latent ambiguity in the will, but only a mistake. See, also, Wig. Wills, props. 5, 6, 7; *Tucker* v. *Seaman's Aid Soc.* 7 Metc. 188; *Lord Walpole* v. *Earl of Cholmondcley*, 7 Term. R. 138; *Herrick* v. *Stover*, 5 Wend. 580; *Williams* v. *Crary*, 4 Wend. 443; *Ryerss* v. *Wheeler*,

22 Wend. 148; *Doe* v. *Hiscocks*, 5 Mees. & W. 369; *Miller* v. *Travers*, 8 Bing. 244; *Okeden* v. *Clifden*, 2 Russ. 309; *Nourse* v. *Finch*, 1 Ves. Jr. 358; *Selwood* v. *Mildmay*, 3 Ves. Jr. 306; *Cambridge* v. *Rous*, 8 Ves. 22; *Benyough* v. *Walker*, 15 Ves. 514; *Herbert* v. *Reid*, 16 Ves. 485; *Brett* v. *Rigden*, Plow. 340; *Cesar* v. *Chew*, 7 Gill & J. 127; *Andress* v. *Weller*, 2 Green, Ch. 604, 608; *Comstock* v. *Hadlyme*, 8 Conn. 254; *Abercrombie* v. *Abercrombie*, 27 Ala. 489. In the case last cited, it was declared: "There is no legal principle more firmly established, none that has received a more constant and uniform support, than the rule which declares that an omission in a written will cannot be supplied by parol evidence." The authorities cited show the general rule applicable to the admission of extrinsic evidence to aid in the construction of written instruments, and are conclusive against the admissibility of evidence to establish a bequest which the testator did not make, when the testimony offered only showed his intention to make it.

But the plaintiffs contend that the devise to them of lands in Ellis county involves a latent ambiguity, and that the devise was in fact a bequest to them of the head-right certificate, and they insist on their right to introduce the evidence objected to, on the ground that it serves to remove the latent ambiguity. What is a latent ambiguity, is thus illustrated in Bac. Law Tracts, 99, 100:

"If I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all. But if the truth be that I have the manors both of South S. and North S.. this ambiguity is matter of fact, and therefore it shall be holpen by averment whether of them it was that the party intended should pass."

So where a testator had two sons both baptized by the name of John, and, believing the elder son to be dead, devises his lands to his son John generally, and in fact the elder son was living, it was held that extrinsic evidence was admissible to remove the ambiguity and show which of the sons was intended to be the devisee. *Lord Cheney's Case*, 5 Rep. 686. The rule in respect to the admission of parol evidence to remove a latent ambiguity is thus stated by Lord ABINGER, in *Doe* v. *Hiscocks*, 5 Mees. & W. 363:

"There is but one case in which it appears to us that this sort of evidence of intention can properly be admitted, and that is where the meaning of the testator's words is neither ambiguous nor obscure, and where the devise is on the face of it perfect and intelligible, but from some of the circumstances admitted in proof an ambiguity arises as to which of two or more things, or which of two or more persons, each answering to the words of the will, the testator intended to express."

The case of *Miller* v. *Travers* is a leading case on this subject, and has always been regarded as of high authority. TINDAL, the chief justice of the common pleas, and LYNDHURST, the chief baron of the exchequer, were called in to assist BROUGHAM, the lord chancellor in the case. Their joint opinion was delivered by TINDAL, the chief justice, and is reported in 8 Bing., *ubi supra*. The case was this: The testator, by his will duly executed, devised "all his freehold and real

estates whatsoever, situate in the county of Limerick and in the city of Limerick," to certain trustees therein named and their heirs. At the time of making the will he had no real estate in the county of Limerick, but he had a small real estate in the city of Limerick and considerable real estate in the county of Clare. The plaintiff concluded that he was at liberty to show by his parol evidence that the real estate in the city of Limerick was inadequate to meet the charges of the will, that the testator intended his estates in Clare also to pass under the same devise. He offered to prove by parol that the estates in the county of Clare were devised to him in the draught of the will, that the draught was sent to a conveyancer to make certain alterations not affecting the estates in the county of Clare; and that by mistake he erased the words "county of Clare," and that the testator afterwards executed the will without noticing the erasure. The court held that the evidence was inadmissible. In delivering judgment the chief justice said that cases of latent ambiguity range themselves into two separate classes:

"The first class is when his description of the thing devised or of the devisee is clear upon the face of the will, but upon the death of the testator it is found that there are more than one estate or subject-matter of devise, or more than one person, whose description follows out and fills the words used in the will. The other class of cases is that in which the description contained in the will of the thing intended to be devised, or of the person who is intended to take, is true in part, but not true in every particular."

The court then proceeded as follows:

"But the case now before the court does not appear to fall within either of these distinctions. There are no words in the will which contains an imperfect, or, indeed, any description of the estates in Clare. The present case is rather one in which the plaintiff does not endeavor to apply the description contained in the will to the estates in Clare, but in order to make out such intention is compelled to introduce new words and a new description into the body of the will itself. * * * This, it is manifest, is not merely calling in the aid of extrinsic evidence to apply the intention of the testator, as it is to be collected from the will itself, to the existing state of his property; it is calling in extrinsic evidence to introduce into the will an intention not apparent upon the face of the will itself. It is not simply removing a difficulty arising from a defective or mistaken description: it is making the will speak upon a subject on which it is altogether silent, and is, in effect, filling up a blank which the testator might have left in his will. It amounts, in short, by the admission of parol evidence, to the making of a new devise for the testator which he is supposed to have omitted."

These extracts from this opinion are directly in point. There is no latent ambiguity in this case which falls under either of the classes mentioned by Chief Justice TINDAL. The devise is of lands which, upon the face of the will, are well described. Now, if the testator had two tracts of land answering equally well the description, this would raise a latent ambiguity, and it would be competent by parol evidence to show which of the two was meant. Or if he owned but one tract of land, which, in some respects, was truly described in the devise, but in other respects not, parol evidence might be received to

remove the ambiguity of the description. But in this case it turns out that he has no land at all. There is, therefore, no ambiguity or imperfect description, but simply a mistake of the testator, who undertook to devise property of which he supposed himself to be the owner, but was not.

The plaintiffs are claiming title under the will to a piece of personal property; namely, a head-right certificate. There are not two head-right certificates to which the words of the will equally apply, nor is the description of the certificate which the plaintiffs claim true in part and incorrect in part. The certificate is not referred to at all in the will, in the remotest manner. But the plaintiffs offer to show by parol evidence that the testator, if he had no land which filled the description contained in the devise, intended them to have the certificate. This is not removing a latent ambiguity. In the language of Chief Justice TINDAL, it amounts to the making of a new devise for the testator, which he is supposed to have omitted. Its effect, if allowed, would be to show that the testator was mistaken in reference to the condition of his property, and to introduce into the will words not used by him, to obviate the consequences of the mistake. In fact, the plaintiffs, by the testimony offered, seek to introduce into the will an additional provision to the effect that if the head-right certificate purchased by the testator of Ewing had not been located, then instead of near 1,500 acres of land in Ellis county, the testator bequeathed to the plaintiffs the head-right certificate. This would not be the removing of an ambiguity for the purpose of giving effect to the will of the testator as he had written and executed it, but the making of another will for him. If the testator desired to make any such disposition of the certificate, in case it had not been located, he should have expressed his desire by proper words in his will, duly executed. But his will contains no devise of the certificate. The plaintiffs, under the pretext of removing a latent ambiguity, seek to establish such a devise for the testator by the testimony of witnesses, given 16 years after his death, to their recollection of the testator's verbal declarations. I think this is a case for the enforcement of the rule which excludes parol evidence to alter or add to the terms of a will.

I am, therefore, of opinion that the evidence offered should be excluded. Without its aid the plaintiffs show no ground for the relief prayed in their bill. It must therefore be dismissed, at their costs; and it is so ordered.

McCORMICK, J., concurred.