**Motion for Rehearing Denied; Majority Opinion and Concurring and Dissenting Opinion of February 2, 2012 Withdrawn; Affirmed in Part and Reversed and Remanded in Part; Substitute Majority Opinion and Substitute Concurring and Dissenting Opinion filed March 1, 2012.**



In The

## Fourteenth Court of Appeals

### NO. 14-10-00505-CV

**NICOLAS BARZOUKAS, Appellant**

**V.**

**FOUNDATION DESIGN, LTD. AND LARRY SMITH, Appellees**

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2007-39932

## SUBSTITUTE CONCURRING AND DISSENTING OPINION

I withdraw my concurring and dissenting opinion dated February 2, 2012 and issue this substitute concurring and dissenting opinion.[1]

---

[1] I would grant appellees' motion for rehearing because I believe the economic loss rule bars appellant's negligence claims and the majority has improperly shifted the burden of proof to the parties moving for no-evidence summary judgment.

I concur with the majority's holding that the record contains no evidence raising a fact issue regarding Barzoukas's claims for fraud and fraudulent inducement. However, I respectfully dissent from the majority's reversal of summary judgment on Barzoukas's negligence claims because I believe (1) the economic loss rule forecloses his negligence claims against Smith and (2) Barzoukas failed to present evidence raising a fact issue relative to his negligence claims against Foundation Design.

## I. BACKGROUND

In September 2005, Barzoukas contracted with Heights Development, Ltd. ("HDL") to build a residential house in Harris County, Texas. Barzoukas specified that the house must be built on a pier-and-beam foundation. HDL retained Smith to design the foundation.[2] Smith designed the piers to extend fifteen feet below grade.

According to Barzoukas, Smith instructed the contractor to set the piers twelve feet below grade without informing Barzoukas. After the City of Houston refused to approve the house because of the pier reduction, Smith and HDL asserted that hard clay stone was discovered at twelve feet, preventing further drilling. Barzoukas claims the reduced piers rendered the foundation unstable and caused systemic damages to his house.

Barzoukas filed suit against HDL, Smith, and various other participants.[3] Barzoukas sued Smith for negligence, negligent misrepresentation, fraud, fraudulent inducement, and conspiracy, and sought exemplary damages. Smith filed a no-evidence

---

[2] In the "Statement of Facts" section of Barzoukas's appellate brief, he made the following factual recitations: (1) Barzoukas contracted with HDL to build his house; and (2) "HDL retained Larry Smith, an engineer from the Dallas area, and various entities associated with him, to design the foundation of Barzoukas's house." Appellees did not contradict these statements. Under the Rules of Appellate Procedure, we must "accept as true the facts stated [by appellant in the "Statement of Facts" section of his brief] unless another party contradicts them." Tex. R. App. P. 38.1(g). This rule applies on appeal from a summary judgment. *See Choice v. Gibbs*, 222 S.W.3d 832, 838 n.6 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Accordingly, I accept as true that Barzoukas contracted with HDL to build the house, and HDL subcontracted with Smith to design the foundation.

[3] With the exception of Smith and a defendant who filed bankruptcy, Barzoukas settled with all other defendants, including HDL.

motion for summary judgment against Barzoukas on all of his claims. The trial court granted the motion without specifying the basis for its reasoning. The court later granted Barzoukas's motion to sever his claims from the underlying suit, thereby rendering the summary judgment a final judgment.

## II. STANDARD OF REVIEW

In a single issue, Barzoukas contends the trial court erred by granting summary judgment in favor of Smith on Barzoukas's claims for negligence, negligent misrepresentation, fraud, and fraudulent inducement.[4]

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact on elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A court sustains a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

An appellate court reviews a summary judgment *de novo* and must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Mendoza v. Fiesta Mart*, 276 S.W.3d 653, 655 (Tex. App.—Houston

---

[4] As the majority notes, Barzoukas does not challenge the portion of the trial court's judgment pertaining to his claims for conspiracy and exemplary damages.

3

[14th Dist.] 2008, pet. denied). When a trial court does not specify the grounds for granting summary judgment, the appellate court must affirm the judgment if any ground is meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### III. NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

Barzoukas argues that the trial court erred by granting summary judgment in favor of appellees on Barzoukas's claims for negligence and negligent misrepresentation.

In their motion for summary judgment, appellees argued that the economic loss rule precluded Barzoukas from raising a fact issue regarding the duty and breach elements of his negligence claims and also generally argued as follows: "Barzoukas has no evidence of any of the essential elements listed above which are necessary to support such a claim of negligence, including without limitation no evidence of any duty or standard of care owed, breach of that duty, breach of that standard of care, economic damages to Barzoukas from that negligence, or proximate cause between the purported negligence and damages." Consequently, it was Barzoukas's burden as the nonmovant to present evidence raising a genuine issue of fact as to each of these elements. *Tamez*, 206 S.W.3d at 582.[5]

As an initial matter, I would conclude the trial court properly granted summary judgment relative to Barzoukas's negligence claims against Foundation Design. Although appellees challenged each negligence element in their no-evidence motion for summary judgment, Foundation Design is not referenced in any of the reports, letters, or other documents attached to Barzoukas's response. Thus, Barzoukas did not present evidence raising a fact issue regarding his negligence claims against Foundation Design. *See Tamez*, 206 S.W.3d at 582.

I next consider whether Barzoukas's negligence claims against Smith are barred

---

[5] This court has previously affirmed a trial court's order granting a no-evidence motion for summary judgment in which the movant argued there was no evidence relative to the nonmovant's negligence claims because the economic loss rule applied. *See Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

under the economic loss rule.

## A. Economic Loss Rule

When a party breaches a contract and the only damage allegation amounts to economic loss to the subject matter of the contract, the action sounds solely in contract. *Jim Walters Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The economic loss rule generally precludes recovery in negligence—including a claim for negligent misrepresentation—for economic losses resulting from failure of a defendant to perform under its contract. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *Sterling Chem., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In operation, the rule restricts contracting parties to remedies prescribed in their contract for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *Lamar Homes*, 242 S.W.3d at 12. Additionally, Texas courts have applied the economic loss rule to preclude negligence claims between parties who have no contractual relationship. *See Sterling Chem.*, 259 S.W.3d at 797.

## B. Analysis

It is undisputed Barzoukas contracted with HDL to build a house, and HDL subcontracted with Smith to design the foundation.[6] Nevertheless, Barzoukas argues that the economic loss rule does not apply to bar his claims against Smith because there was no contractual privity between them, meaning the damages caused by Smith were not economic loss stemming from breach of contract. Barzoukas relies heavily on the Texarkana Court of Appeals's opinion in *Goose Creek Consolidated Independent School District of Chambers and Harris Counties, Texas v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486 (Tex. App.—Texarkana 2002, pet. denied).

Goose Creek Independent School District contracted with Lewis to construct three schools. *Id.* at 491. Lewis then subcontracted with Jarrar's Plumbing to install plumbing.

---

[6] See footnote 1, *supra*.

5

*Id.* After the schools were occupied, plumbing defects were discovered. *Id.* The school district sued Lewis and later sued Jarrar's Plumbing for various causes of actions including negligence. *Id.* 491–92. The school district alleged that Jarrar's Plumbing's negligence caused "the invasion of raw sewage and sewer gas into the school buildings, . . . caus[ing] portions of the buildings to be unusable at times." *Id.* at 495. The jury concluded Jarrar's Plumbing was negligent and awarded the school district damages for cost of repairs and loss of use. *Id.* at 492. The trial court denied Jarrar's Plumbing's motion for judgment notwithstanding the verdict based on an argument that the school district's negligence claim was barred under the economic loss rule. *Id.* at 493–94.

Acknowledging there was no contract between the school district and Jarrar's Plumbing, the court of appeals concluded the school district's negligence claim was not barred by the economic loss rule because it was "based on a breach of Jarrar's Plumbing's duty to all persons to use reasonable care not to injure persons or property in the performance of the contract." *Id.* at 494. The court further reasoned:

> The acts [the school district] alleged may also have breached Jarrar's Plumbing's contract with Lewis. However, the injury [the school district] alleged, the invasion of sewage and sewer gas into the school buildings, constitutes an injury to property that was not the subject matter of the contract, that portion of the contract [the school district] had with Lewis for which Lewis contracted with Jarrar's Plumbing, namely the plumbing. Therefore, the injury alleged did not constitute pure economic loss for which [the school district] could recover only in contract.

*Id.* at 495; *see Thomson v. Espey Huston & Assocs. Inc.*, 899 S.W.2d 415, 417, 421–22 (Tex. App.—Austin 1995, no writ) (holding claim not barred by economic loss rule when (1) owner contracted with HWC to build apartment complex, (2) HWC subcontracted with Espey to design drainage system and test soil quality, and (3) owner later sued Espey, alleging negligence in designing drainage system and testing soil quality caused damages to other parts of complex; damages alleged were beyond scope of contract between HWC and Espey); *see also Munters Euroform GmbH v. Am. Nat. Power, Inc.*, No. 03-05-00493-CV, 2009 WL 5150033, at *5–6 (Tex. App.—Austin Dec. 31,

6

2009, pet. dism'd) (mem. op.) (reaffirming *Thomson* holding by concluding that when owner sues subcontractor, application of economic loss rule is determined by subject matter of subcontract, not contract with general contractor).

Relying on *Goose Creek*, Barzoukas argues that the economic loss rule is inapplicable because the damages caused to his house were beyond the scope of HDL's foundation-design subcontract with Smith. Contrarily, Smith argues that the economic loss rule applies because the damages to Barzoukas's house are within the scope of Barzoukas's contract with HDL. Smith relies on the First Court of Appeals's opinion in *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The Pughs contracted with Westbrook to build their house. *Id.* at 86. Westbrook subcontracted with RBS to apply veneer on the house. *Id.* General Terrazzo manufactured the veneer, instructed RBS regarding veneer application, and inspected RBS's work. *Id.* The Pughs later complained that the veneer had been improperly applied, causing moisture penetration and damage to the wood structure of the house and hardwood flooring. *Id.* at 86–87. Among other claims, the Pughs sued General Terrazzo for negligence (supplying incompatible, improperly manufactured veneer, and failing to supervise application and inspect completed work) and products liability (marketing without adequate instructions). *Id.* at 87. In its motion for summary judgment, General Terrazzo argued the Pughs' negligence claims were barred under the economic loss rule. *Id.* The Pughs responded that the doctrine was inapplicable because they sought damages beyond the scope of General Terrazzo's duties. *Id.* The trial court granted General Terrazzo's motion. *Id.* at 88–89.

The court of appeals acknowledged that courts have applied the economic loss rule in two contexts: (1) "to preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract"; and (2) "to preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or

7

damage to 'other property.'" *Id.* at 90–91 (citations omitted). The court determined that both contexts applied to the Pughs' claims. *Id.* at 93–94. In regard to the first context, the court noted that the economic loss rule "has been applied to preclude tort claims between parties who are not in privity." *Id.* at 91. The court determined that the rule applied to bar the Pughs' claims, in part because their damages were limited to the house. *Id.* at 94. The court explained, "[A]lthough the Pughs were not in privity with General Terrazzo, their economic losses were the subject matter of their contract with Westbrook, and the Pughs have already obtained a judgment against Westbrook for their economic losses to their home." *Id.* at 94.

Barzoukas contends *Pugh* is inapplicable because that court was addressing a products-liability claim, whereas Barzoukas's claims are based on general negligence. Although the products-liability aspect of *Pugh* distinguishes it from the present case, I reiterate that the court's conclusion was based partially on the fact that the damages caused by misapplication of the veneer involved the Pughs' house, which was the subject of the Pughs' contract with Westbrook. *Id.* Similarly, the damages caused by the allegedly defective foundation involve Barzoukas's house, which was the subject of his contract with HDL.[7]

Admittedly, the court in *Goose Creek* focused on the subject matter of the contract between the general contractor and the subcontractor—plumbing—and concluded the economic loss rule did not apply because the plaintiff's damages extended beyond plumbing. 74 S.W.3d at 495. However, I would apply the *Pugh* court's rationale and conclude that the economic loss rule applies when the plaintiff's damages are the subject matter of his contract with the general contractor, even if caused by the negligence of a subcontractor with whom the plaintiff is not in privity. *See* 243 S.W.3d at 91, 94; *cf. also Sterling Chem.*, 259 S.W.3d at 797–98 (holding claims barred by economic loss rule when (1) company contracted with PHS to build and operate gas-producing facility, (2)

---

[7] I acknowledge that *Pugh* is also factually distinct from the present case because General Terrazzo was a manufacturer, whereas Smith is a subcontractor.

8

PHS entered into license agreement to use certain Texaco technology, (3) Texaco technology allegedly caused disruptions resulting in lost profits, and (4) company sued Texaco for negligent misrepresentation; no privity existed between company and Texaco but lost profits represented benefit-of-the-bargain damages addressed by company's contract with PHS).

I am persuaded to apply the *Pugh* court's rationale in order to preserve the risk allocations existing among the various parties involved in a construction project.[8] *See Pugh*, 243 S.W.3d at 94 (citing *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 106–07 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Hininger v. Case Corp.*, 23 F.

---

[8] The majority concludes summary judgment was improper because the risk allocations accepted between the contracting parties are unknown. I agree that the contract between Barzoukas and HDL and the subcontract between HDL and Smith were not presented to the trial court relative to appellees' no-evidence motion for summary judgment. However, it is conclusively established that Barzoukas hired HDL to construct the house, and HDL subcontracted with Smith to design the foundation. After designing the foundation, Smith sent a letter to HDL in which he made the following recitations:

> At your request, an engineer from our firm has reviewed the information provided regarding the pier drilling operations at the above referenced residence [Barzoukas's house]. A representative of your firm notified us that during the drilling operations, clay was encountered. . . . Due to the presence of hard clay stone, the pier depth shallowed to 12'-0" . . . . This letter is to serve as an addendum to the plans and specifications with the changes noted above. . . . We trust this is the information, which you require.

Although the majority concludes it is unknown whether Smith made this addendum pursuant to the terms of his subcontract with HDL, it is obvious the addendum was made pursuant to Smith's relationship with HDL—HDL informed Smith that a pier reduction occurred, and Smith amended the design plans accordingly. Plan modifications are common in construction projects, and I can conceive of no reason why the economic loss rule should not apply when the general contractor requests a subcontracted engineer to amend his designs. Each of the parties had the opportunity and prerogative to allocate risk of loss. Accordingly, the fact that we do not know how risks were actually allocated should not preclude application of the economic loss rule.

Additionally, I would affirm the trial court's summary judgment relative to Barzoukas's negligence claims because Barzoukas, as the nonmovant to a no-evidence motion for summary judgment, did not present evidence supporting an inference that the economic loss rule does not apply, *i.e.*, no evidence supports a finding that Smith committed negligence outside his role as subcontractor or that Barzoukas sustained damages unrelated to the subject matter of the prime contract. As noted in footnote 4, *supra*, our court previously affirmed a trial court's order granting a no-evidence motion in which the movant contended the nonmovant's negligence claims were precluded by the economic loss rule. *See Coastal Conduit*, 29 S.W.3d at 285. Moreover, the majority agrees that Barzoukas had the burden to raise a fact issue as the nonmovant of a no-evidence motion: "the economic loss rule's applicability in this case must be analyzed in 'no evidence' terms under Rule 166a(i)." *See Barzoukas v. Foundation Design, Ltd.*, No. 14-10-00505-CV (majority op.).

9

3d 124, 126–27 (5th Cir. 1994)).  In fact, when the Texas Supreme Court recently rejected the respondents' contention that allowing the petitioner to recovery in negligence would upset negotiated risk allocations, the court recognized that construction-defect cases "usually involve parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by [petitioner]."  *See Sharyland Water Supply Corp. v. City of Alton*, --- S.W.3d ---, No. 09-0223, 2011 WL 5042023, at \*5–9 (Tex. Oct. 21, 2011).  With respect to this principle,

> [C]onstruction projects are multi-party transactions, but rarely is it the case that all or most of the parties involved in the project will be parties to the same document or documents.  In fact, most construction transactions are documented in a series of two-party contracts, such as owner/architect, owner/contractor, and contractor/subcontractor.  Nevertheless, the conduct of most construction projects contemplates a complex set of interrelationships, and respective rights and obligations.

Fundamentals of Construction Law 4–5 (Carina Y. Enhada et al., eds., 2001).

Barzoukas responds that concerns about risk allocations are moot in this situation because HDL and Smith acted in complicity.  Specifically, Barzoukas contends HDL has no cognizable claim for breach of contract against Smith because they acted in concert to lower the pier depth.  I would not create such an exception to the economic loss rule.  Admittedly, by ratifying a subcontractor's negligence, a general contractor might waive its right to sue the subcontractor for breach of contract.  However, this concept affects only the risk allocation between the contractor and the subcontractor; the risk allocation between the property owner and the general contractor remains the same, i.e., the owner's recourse is against the general contractor, regardless of whether the general contractor has a cognizable breach-of-contract claim against the subcontractor.  I recognize there may be situations in which an owner is unable to recover fully against the general contractor.  Nevertheless, "[i]mplicit in the [economic loss rule] is the policy judgment that in a commercial context the possibility of an inadequate recovery . . . does not justify permitting a tort recovery that will allow a purchaser to . . . disrupt[] the risk allocations that have been worked out in the transaction comprising that chain."  *Hou-Tex, Inc.*, 26

10

S.W.3d at 107 (quoting *Hininger*, 23 F.3d at 127). Similarly, the owner should not be permitted to disrupt established risk allocations by suing a subcontractor whose negligence was ratified by the general contractor when the owner's loss is the subject of his contract with the general contractor. Unless the subcontractor's negligence caused the owner damages beyond the subject matter of his contract with the general contractor, the owner's sole recourse is against the general contractor.

Several other sister state jurisdictions have concluded that the economic loss rule bars negligence claims against subcontractors in construction cases. For example, *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, involved facts very similar to those of the present case. 374 S.E.2d 55 (Va. 1988). The plaintiffs were private individuals who contracted with a general contractor to construct a home with a swimming pool. *Id.* at 56. The general contractor subcontracted with an architect to design the home and pool and a builder to construct the pool. *Id.* The plaintiffs sued both subcontractors, alleging that the pool was negligently designed and constructed, causing foundation damage to the house. *Id.* Answering a certified question from the federal court of appeals, the Supreme Court of Virginia concluded:

> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective—one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.
>
> Recovery in tort is available only when there is a breach of a duty "to take care for the *safety* of the person or property of another." . . . [The subcontractors] assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law.

*Id.* at 58.

11

As an another example, in *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, a county library contracted with an architect to remodel a building, and the architect hired subcontractors to perform architectural and engineering services, including remodeling the basement-level garage of the building. 929 N.E.2d 722, 725 (Ind. 2010). The library later filed negligence claims against the subcontractors, alleging that the defectively remodeled garage caused damages to the entire building. *Id.* at 725–26. The Supreme Court of Indiana determined that the economic loss rule barred the library's negligence claim because remodeling the garage was an integral part of whole project. *Id.* at 732. Although there was no contractual privity between the library and the subcontractors, the court recognized that the library was "connected [to the subcontractors] through a network or chain of contracts." *Id.* at 739; *see also, e.g.*, *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 20–26, 221 P.3d 234 (determining plaintiff's lack of privity with subcontractors and fact that defective roofs, foundations, and siding caused systemic damages to townhouses did not prevent application of economic loss rule); *Linden v. Cascade Stone Co., Inc.*, 2005 WI 113, ¶ 32, 283 Wis. 2d 606, 627–28, 699 N.W.2d 189, 199–200 ("We conclude that when one contracts with a general contractor to build a house and the general contractor subcontracts with others to provide various services, the general contract controls whether the economic loss doctrine is available as a defense."); *Calloway v. City of Reno*, 993 P.2d 1259, 1267–70 (Nev. 2000) (concluding economic loss rule barred residential homeowners' negligence claims against framing subcontractors for damages to whole house because defective framing was component of houses).[9] *But see, e.g.*, *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 671–72 (Ariz. 2010) (concluding economic loss rule does not apply when plaintiff and defendant are not in contractual privity); *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 870 (Colo. 2005) ("[T]he economic loss rule has

---

[9] After *Calloway*, the Nevada Legislature enacted a statute that authorizes residential homeowners to pursue negligence claims in residential construction defect cases. *See Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004) (interpreting Chapter 40 of Nevada Revised Statutes to authorize negligence claims in residential construction defect cases).

no application to negligent residential construction claims against subcontractors because subcontractors owe homeowners an independent duty of care to act without negligence in the construction of homes.").

Generally, "[o]ne who undertakes to perform a contract assumes a duty to all persons to take reasonable care not to injure them or their property in the performance of that contract, and one who is not privy to the contract may assert a claim for negligence for a breach of that duty." *Wolf Hollow I, L.P. v. El Paso Marketing, L.P.*, 329 S.W.3d 628, 644 (Tex. App.—Houston [14th Dist.] 2010, pet. granted) (quoting *Goose Creek*, 74 S.W.3d at 494). However, I would recognize an exception to the rule when a subcontractor's negligence causes damages to the subject matter of the prime contract between the plaintiff and general contractor. Accordingly, I would hold that the economic loss rule bars Barzoukas's negligence claims against Smith and affirm the summary judgment against Barzoukas on these claims.

/s/    Charles W. Seymore
Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Boyce. (Boyce, J., majority).