Nicolas **BARZOUKAS**, Appellant,

v.

**FOUNDATION DESIGN, LTD.** and **Larry Smith**, Appellees.

No. 14–10–00505–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 1, 2012.

Rehearing En Banc Overruled April 11, 2012.

Kurt B. Arnold, Houston, for appellant.

Anthony A. Petrocchi, Dallas, Erin Elizabeth Jones, James P. McInerny, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## SUBSTITUTE MAJORITY OPINION

WILLIAM J. BOYCE, Justice.

We overrule the motion for rehearing, withdraw our opinion dated February 2, 2012, and issue the following substitute opinion.

Nicolas Barzoukas sued Foundation Design, Ltd. and engineer Larry Smith for damages in connection with alleged defects in the foundation of Barzoukas's house. The trial court granted a no-evidence summary judgment on all claims asserted against Foundation Design and Smith. We affirm in part and reverse and remand in part.

### BACKGROUND

Heights Development, Ltd. contracted with Barzoukas in September 2005 to build a house for him. Barzoukas sued Heights Development, Foundation Design, Smith, and numerous other defendants who participated in the construction of his house, contending that it is riddled with problems. Smith is the engineer of record for the house's foundation design.

The plans and specifications originally called for 15-foot piers to support the foundation. After construction began, Smith signed a letter addressed to Heights Development changing the plans and specifications to allow for 12-foot piers—supposedly because "hard clay stone was encountered" while drilling holes for the piers. Barzoukas says the given justification for shallower piers was false and Smith knew or should have known it was false. According to Barzoukas, general contractor Heights Development used this letter to persuade the City of Houston to allow continuation of construction after an inspector initially rejected the foundation because the piers were too shallow. Barzoukas asserts that the city has never approved the house's foundation. Barzoukas's expert engineer opines that Smith violated the professional standard of care by approving the pier depth change.

Expert reports indicate that the piers are deficient because they are too shallow;

they are not located properly under the house; they are crooked; and they do not make proper contact with the framing I-beams used to support the house. The estimated cost of repairing the foundation by adding ten new piers is $25,000.

Barzoukas eventually settled with all defendants except for Foundation Design, Smith, and another defendant who filed for bankruptcy. As to Foundation Design and Smith, Barzoukas asserted claims for negligence, negligent misrepresentation, fraud, fraudulent inducement, conspiracy, and exemplary damages in connection with the foundation.

Foundation Design and Smith filed a no-evidence motion for summary judgment on all claims asserted against them. The trial court granted the motion without specifying the basis for its ruling. The court later granted Barzoukas's motion to sever his claims against Foundation Design and Smith. Barzoukas now appeals and contends that summary judgment is not warranted.

### STANDARD OF REVIEW

In a no-evidence motion for summary judgment, the movant must specifically identify the elements for which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex.App.-Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the respondent presents evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166 a(i). However, the respondent is " 'not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.' " *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (quoting Tex.R. Civ. P. 166a(i) cmt. (1997)).

We review a summary judgment *de novo* and must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). When a trial court does not specify the grounds for granting summary judgment, we must affirm the judgment if any summary judgment ground is meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### ANALYSIS

In a single issue, Barzoukas contends that the trial court erred by granting summary judgment in favor of Foundation Design and Smith.

The parties' appellate briefing focuses primarily on whether Barzoukas's negligence and negligent misrepresentation claims are foreclosed under the economic loss rule. In addition to their reliance on the economic loss rule as a bar to recovery, Foundation Design and Smith contend that summary judgment is warranted because Barzoukas failed to proffer competent evidence establishing that their conduct proximately caused damages. Foundation Design and Smith also contend that Smith's letter does not give rise to viable claims for fraud and fraudulent inducement. We address these contentions in turn.[1]

### I. Economic Loss Rule

#### A. Overview

Applying the economic loss rule in this case presents two challenges.

---

1. Barzoukas does not challenge the portion of the trial court's judgment pertaining to his claims for conspiracy and exemplary damages. Thus, we affirm the judgment to the extent it pertains to those claims.

The first challenge arises because the economic loss rule's legal boundaries are not entirely settled.

The second challenge arises because the relevant summary judgment pleadings in this record include neither (1) the contract between homeowner Barzoukas and general contractor Heights Development; nor (2) the purported subcontract between Heights Development and engineer Smith—or, possibly, between Heights Development and Foundation Design or some other entity related in some way to Smith. A portion of what appears to be the Barzoukas–Heights Development contract appears elsewhere in the record.[2] But even if we were to consider evidence outside of the summary judgment pleadings related to Foundation Design and Smith, little is gained because this portion of the contract is incomplete. The purported subcontract is entirely missing. These gaps make it more difficult to evaluate application of the economic loss rule.

The difficulty is compounded by an awkward procedural posture. This case presents as an appeal from an order granting a no-evidence motion for summary judgment. Texas Rule of Civil Procedure 166a(i) authorizes summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex.R. Civ. P. 166a(i). Such a motion "must state the elements as to which there is no evidence" and the trial court must grant the motion "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.*

■ Significant hammering and bending is required to fit the appellate argument of Foundation Design and Smith—which invokes the economic loss rule in asserting that "as a matter of law no cause of action for negligence or negligent representation runs in favor of appellant with respect to appellees as subcontractors"—within Rule 166a(i). Determining whether "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion" is an inquiry under Rule 166a(c)'s traditional summary judgment standard, with its attendant burdens on the movant. *See* Tex.R. Civ. P. 166a(c); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

Proper placement of the summary judgment burden helps to determine how gaps in evidence regarding the Barzoukas–Heights Development contract and the purported subcontract affect the analysis on appeal. But no argument regarding the operative summary judgment standard has been raised in the trial court or on appeal. Therefore, despite an imperfect fit between the arguments on appeal and the summary judgment mechanism the appellees invoked in the trial court, the eco-

---

**2.** A portion of a "New Home Contract" identifying Heights Development as the "Seller" and Barzoukas as the "Buyer" was attached to Plaintiff's Response to Heights Defendants' Motion for Summary Judgment as to the Measure of Damages. This is identified as a form contract "Promulgated By The Texas Real Estate Commission" and bears the name "Karen Derr & Associates Realty" across the top. This copy is not signed by Barzoukas or a representative of Heights Development, although it appears to have Barzoukas's initials at the bottom of pages one through seven.

Paragraph 7.B. of this document is entitled "Construction Documents" and states: "Seller shall complete all improvements to the Property with due diligence in accordance with the Construction Documents." In turn, the "Construction Documents" are defined to include plans, specifications, and change orders; the document recites that the "Construction Documents have been signed by the parties and are incorporated into this contract by reference." The "Construction Documents" themselves do not appear in the record.

nomic loss rule's applicability in this case must be analyzed in "no evidence" terms under Rule 166a(i).

Although areas of uncertainty exist under case law addressing the economic loss rule in Texas, at least one thing is clear: Details matter.

■ It matters who contracted with whom to do what. It matters what the contracts say; what they cover; and what they do not cover. It matters what kind of damages are requested. It matters whether the requested damages are attributed to activities covered by the contracts. It matters whether and how multiple parties in a chain of contracts allocated among themselves the risk that participants in the chain would perform deficiently, along with the obligation to pay for deficient performance. It matters what kinds of claims are asserted and against whom they are asserted.

The details are largely missing here. The parties agree that a contract existed between Barzoukas and Heights Development regarding the construction of Barzoukas's house. They agree that a subcontract existed in relation to the house's foundation. They also agree that Heights Development was a party to the purported subcontract, and Barzoukas was not. Much of the rest is guesswork.

This is the backdrop against which we must analyze the economic loss rule's potential applicability when Barzoukas attempts to sue an engineer for professional negligence and negligent misrepresentation in connection with foundation problems in the house Heights Development contracted to build for him. Barzoukas does not contend that the original plans and specifications calling for 15–foot piers are deficient. Instead, his claims rest on a letter signed by Smith after construction was underway; this letter is characterized as "an addendum to the plans and specifications" by which Smith approved reduc-

ing the foundation's pier depth from 15 feet to 12 feet.

Determining whether the economic loss rule applies here to foreclose Barzoukas's negligence and negligent misrepresentation claims against Foundation Design and Smith involves a two-step analysis focusing on (1) identifying the governing legal standards, and (2) applying those standards to the record in this case. We now turn to this analysis.

### B. Legal Standards Governing the Economic Loss Rule in Texas

The Texas Supreme Court's most recent discussion of the economic loss rule appears in *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex.2011).

■ In broad terms, this doctrine addresses efforts to use negligence and product liability claims as vehicles for recovery of economic losses. *See id.* at 414–418. *Sharyland* emphasizes that shorthand references to "the" economic loss rule in the singular can be "something of a misnomer" because this term actually encompasses multiple concepts addressing efforts to recover particular economic losses in particular situations. *Id.* at 414–15.

*Sharyland* goes on to describe the circumstances under which application of the economic loss rule is settled under Texas law, and those under which it is unsettled. *Id.* at 415–21.

- The economic loss rule forecloses strict liability claims based on a defective product that damages only itself but not other property. *Id.* at *6 [415–17] (citing *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325–26 (Tex.1978); *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv., Inc.*, 572 S.W.2d 308, 312–13 (Tex.1978); and *Nobility*

*Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81–2 (Tex.1977)).

- The economic loss rule also forecloses a negligence claim predicated on a duty created under a contract to which the plaintiff is a party when tort damages are sought for an injury consisting only of economic loss to the subject of the contract. *Sharyland*, [354 S.W.3d at 417–18] 2011 WL 5042023 at *7 (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991); and *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986)).

- In these two contexts, economic losses are more appropriately addressed through statutory warranty actions or common law breach of contract suits instead of tort claims. *Sharyland*, [354 S.W.3d at 417–18] 2011 WL 5042023 at *7.

- "We ... declined to extend *DeLanney* to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract." *Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)).

- The economic loss rule " 'applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.' " *Sharyland*, [354 S.W.3d at 417–18] 2011 WL 5042023 at *7 (quoting *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007)).

- The economic loss rule applies in some circumstances involving parties who are not in privity—such as those involving a remote manufacturer and a consumer in the defective product context. *Sharyland*, [354 S.W.3d at 417–18] 2011 WL 5042023 at *7.

- "[W]e have never held that [the economic loss rule] ... precludes recovery completely between contractual strangers in a case not involving a defective product...." *Id.*

- The supreme court rejects a formulation of the economic loss rule that "says you can never recover economic damages for a tort claim." *Id.* at *8 [418].

- The economic loss rule is not a general rule of tort law; instead, it is a rule in negligence and strict product liability cases. *Id.*

- Merely because the object of the negligent performance "was the subject of a contract does not mean that a contractual stranger is necessarily barred from suing a contracting party for breach of an independent duty." *Id.* "If that were the case, a party could avoid tort liability to the world simply by entering into a contract with one party." *Id.*

- "The economic loss rule does not swallow all claims between contractual and commercial strangers." *Id.*

- The supreme court has not yet decided "whether purely economic losses may ever be recovered in negligence or strict liability cases." *Id.*

Based on these precepts, the supreme court rejected reliance on the economic loss rule to foreclose Sharyland's claim against a plumbing contractor alleged to have damaged Sharyland's water system by negligently installing an adjacent sewer system under a separate contract to which Sharyland was not a party. *Id.* at 420–21.

Neither Sharyland's Water Supply Agreement with the city nor the city's separate contract with a plumbing contractor defeated Sharyland's negligence claim against the plumbing contractor. Sharyland asserted this negligence claim against the contractor seeking to recover the cost of relocating or encasing its water lines to prevent contamination from the improper-

ly installed sewer lines. *Id.* Based in part on the existence of these damages, the supreme court concluded as follows: "We disagree that the economic loss rule bars Sharyland's recovery in this case." *Id.*

In so holding, the supreme court disclaimed any intent to address circumstances in construction cases involving "parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by Sharyland." *Id.* "While it is impossible to analyze all the situations in which an economic loss rule may apply, it does not govern here." *Id.* "The rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract." *Id.*

With the partial guidance provided in *Sharyland,* this court must determine whether to accept Foundation Design's and Smith's invitation and hold that the economic loss rule forecloses Barzoukas's negligence and negligent misrepresentation claims predicated on the letter signed by Smith.

## C. Applying the Economic Loss Rule

Foundation Design and Smith assert that "economic losses alleged by homeowners falling within the subject matter of their contract with the homebuilder preclude tort claims, including negligence and negligent misrepresentation, against subcontractors under the economic loss doctrine." They rely heavily on *Pugh v. Gen. Terrazzo Supplies, Inc.,* 243 S.W.3d 84 (Tex.App.-Houston [1st Dist.] 2007, pet. denied), to support this proposition.

Foundation Design and Smith also contend that Barzoukas's negligence and negligent misrepresentation claims involve parties in a contractual chain who already have allocated the risk of deficient performance. They assert that applying the economic loss rule here is necessary to preserve the agreed-upon risk allocations among the parties who built Barzoukas's house.

■ The arguments proffered by Foundation Design and Smith fail for two reasons.

First, Foundation Design and Smith misplace their reliance on *Pugh.* That case addressed claims for negligence, strict liability, and breach of implied warranties brought by homeowners against General Terrazzo, the manufacturer of an "exterior insulated finishing system" used in constructing their house. *Pugh,* 243 S.W.3d at 86–7. The homeowners alleged that General Terrazzo's exterior finishing product was defective because it allowed moisture penetration that damaged the house's frame and interior. *Id.*

*Pugh* addressed only claims asserted against the product manufacturer. The homeowners dismissed their claims against the masonry subcontractor who applied the exterior finish manufactured by General Terrazzo. *Id.* at 87 n. 2. They obtained a default judgment against the general contractor. *Id.* Neither the general contractor nor the masonry subcontractor was a party to the appeal. *Id.*

As this procedural history makes clear, *Pugh* applied existing economic loss rule principles governing negligence and strict liability claims by consumers against the remote manufacturer of a defective product. *Id.* at 90–95; *see also Sharyland Water Supply Corp.,* 354 S.W.3d at 415–18. *Pugh* did not analyze the viability of claims asserted against a general contractor or a subcontractor. *Pugh,* 243 S.W.3d at 87 n. 2 & 90–95. *Pugh* concluded that the economic loss rule foreclosed the homeowners' negligence and strict liability claims against product manufacturer General Terrazzo—even in the absence of privity between them—because "there was no

personal injury or damage to other property that would have permitted the Pughs to assert a tort claim that would be excepted from the economic loss doctrine." *Id.* at 94 (citing *Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 145 (5th Cir. 1995), *Hininger v. Case Corp.*, 23 F.3d 124, 127 (5th Cir.1994), and *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex.App.-Dallas 2003, no pet.)).

In contrast to *Pugh*, Barzoukas does not aim his negligence and negligent misrepresentation claims at the remote manufacturer of an allegedly defective product. Barzoukas's claims involve Smith's asserted professional negligence in connection with approval of foundation piers that are shorter than the depth called for by the original plans and specifications. Thus, we must address a different question that was left open in *Sharyland* by addressing whether—in the particular home construction circumstances presented here—the economic loss rule "precludes recovery completely between contractual strangers in a case not involving a defective product...." *See Sharyland Water Supply Corp.*, 354 S.W.3d at 418. *Pugh* does not answer this question.

Second, Foundation Design's and Smith's arguments fail because they rely on unwarranted assumptions. Foundation Design and Smith assume the existence of (1) a contractual chain that begins with Barzoukas and ends with Smith; and (2) risk allocations within this chain that need protection from the disruptive effects of a freestanding negligence claim by the homeowner against a subcontractor. Neither assumption is warranted on this record.

The first assumption is unwarranted because it is not clear who contracted with whom to do what. Heights Development contracted to build a house for Barzoukas. Smith is portrayed as a subcontractor, but his exact role is not clear on this record.

The most detailed evidence concerning Smith's role comes from the Affidavit of Kirby Meyer, P.E., who states: "Larry F. Smith, a Professional Engineer, State of Texas License # 43095 is the engineer of record for the design of the foundation of this structure." The affidavit also states: "It's my understanding that Larry Smith may have done such work individually or under different entities." Plaintiff's Seventh Amended Petition filed on April 15, 2010 lists the following as defendants: Foundation Design, LTD d/b/a Larry Smith Engineering; Larry Smith Engineering a/k/a Larry Smith, PC, a Texas professional corporation; Larry Smith, PC, a Texas professional corporation; and Larry Smith individually. The letter itself is typed on letterhead reading "Larry Smith Engineering" and is signed by Larry F. Smith above a signature block that reads, "Larry F. Smith, P.E. Registered Professional Engineer." The letter does not reference "Foundation Design, Ltd."

This evidence falls short of establishing that Barzoukas's claims against Foundation Design and Smith are foreclosed "as a matter of law" because those claims are subsumed by a contractual chain in which the risk of Smith's deficient performance already has been addressed. We do not know from the four corners of the summary judgment pleadings how the Heights Development–Barzoukas contract addressed changes to plans and specifications once construction had begun. The existence, terms and scope of any subcontract involving the foundation design are unresolved on this record. So too is the identity of the parties to the purported subcontract. Also unresolved is whether the asserted subcontract encompasses Smith's post-design conduct in approving a change in pier depth after construction was underway.

The second assumption is unwarranted as well. Perhaps Smith or an entity relat-

ed to him agreed to indemnify Heights Development for damages arising from Smith's negligent performance of foundation-related engineering activities. Perhaps not. Perhaps other risk allocation mechanisms exist. Perhaps not. At this juncture, any discussion of risk allocation among entities involved in the construction of Barzoukas's house is speculation based on a threadbare record.

Mindful that this case comes to us as an appeal from an order granting a no-evidence summary judgment under Rule 166a(i), we conclude that reversal is warranted because Meyer's affidavit and Smith's letter raise material fact issues with respect to the mechanism for and effect of design changes during construction under the Heights Development–Barzoukas contract; the identities of the parties to any subcontract concerning the foundation; the scope of work to be performed under such a subcontract; whether the piers are 12 feet deep; whether Smith's approval of changing the pier depth from 15 feet to 12 feet was within the scope of any subcontract concerning the foundation; and whether changing the pier depth caused a loss unrelated to a subcontract covering foundation plans and specifications. *See Sharyland Water Supply Corp.*, 354 S.W.3d at 420 ("The [economic loss] rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract."); *see also Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 495 (Tex.App.-Texarkana 2002, pet. denied) ("[T]he injury Goose Creek alleged, the invasion of sewage and sewer gas into the school buildings, constitutes an injury to property that was not the subject matter of the contract, that portion of the contract Goose Creek had with Lewis for

which Lewis contracted with Jarrar's Plumbing, namely the plumbing."); *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 421–22 (Tex.App.-Austin 1995, no writt) ("In contrast, Espey's alleged negligence in performing the Scope of Services Contract may give rise to a tort cause of action. Thomson alleges that Espey's negligence in designing the drainage system and testing soil quality has caused damage to other parts of the apartment complex.").

Pointing to the existence of a contract between Heights Development and Barzoukas, or to the existence of a subcontract, is the beginning of the analysis—not the end.

■ *Sharyland* demonstrates that the mere presence of contracts in the general vicinity of a construction dispute does not justify indiscriminate invocation of the economic loss rule. *See Sharyland Water Supply Corp.*, 354 S.W.3d at 418–21. The economic loss rule's reach depends on specific circumstances. *See id.* These circumstances may include risk allocations in a chain of contracts that affect whether negligence claims seeking particular damages against particular parties are viable in connection with a construction dispute in particular circumstances. *See id.* at 420–21. No such allocations have been identified here.

On this record, Foundation Design and Smith cannot obtain summary judgment on grounds that the economic loss rule forecloses Barzoukas's negligence and negligent misrepresentation claims against them "as a matter of law."

## II. Causation and Damages

As alternative grounds for affirmance, Foundation Design and Smith argue that summary judgment on negligence and negligent misrepresentation is warranted because Barzoukas failed to proffer competent evidence establishing causation and damages in connection with the foundation.

Foundation Design and Smith contend on appeal that Barzoukas failed to proffer competent evidence because (1) the report of his damages expert Richard Roy was not properly authenticated; (2) Roy relies in part on another report, which also is not authenticated; (3) Barzoukas failed to supplement his responses to another defendant's requests for disclosures under Texas Rule of Civil Procedure 194 to identify the amount and method of calculating economic damages; (4) Roy's opinion is unreliable because his qualifications to proffer expert damages testimony are not established as required under Texas Rule of Evidence 702; and (5) Roy's $25,000 estimate for repairing the foundation is conclusory because he fails to allocate that amount among repairs required to address the short piers referenced in Smith's letter and other foundation problems that are not attributed to Smith.

Foundation Design and Smith objected to Barzoukas's evidence on these grounds in the trial court. These objections are contained in "Defendants Foundation Design, Ltd. d/b/a Larry Smith Engineering and Larry Smith's Reply to Plaintiff's Response to Defendants' No Evidence Motion for Summary Judgment" filed on May 4, 2010. The record contains no indication that the trial court ruled on these objections. The summary judgment order itself does not address evidentiary objections.

■ We do not presume that an order granting summary judgment also overrules objections to summary judgment evidence. *Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 335 n. 2 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). The absence of a ruling on objections (1) and (2) regarding authentication forecloses consideration of those challenges on appeal. *Commint Technical Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (absence of ruling on objection to form challenging propriety of authentication forecloses consideration on appeal) (citing *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.)). Even assuming for argument's sake that Foundation Design and Smith validly can invoke Barzoukas's asserted failure to answer another defendant's discovery inquiry as a basis for objecting, the absence of a ruling likewise forecloses consideration of objection (3). An express ruling also is required on objections that an expert opinion is unreliable. *See Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 301 (Tex.App.-Beaumont 2010, pet. dism'd).[3]

3. Appellees contend on rehearing that this holding with respect to objections to the reliability of an expert opinion conflicts with *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.). We disagree because the circumstances in *Praytor* are distinguishable. The trial court granted summary judgment after Ford filed a no-evidence motion for summary judgment on grounds that Praytor lacked evidence of a causal link between her respiratory problems and the deployment of an air bag in her car during an accident. *Id.* at 240. Praytor responded by attaching affidavits from two experts. *Id.* Ford objected to the affidavits under Texas Rule of Evidence 702. The trial court granted summary judgment in favor of Ford and expressly stated, "Plaintiff has not produced legally competent evidence regarding causation, an essential element of her case." *Id.* This court stated as follows on appeal: "The trial court, in holding that Praytor had failed to present 'legally competent evidence,' effectively concluded that the expert testimony was either inadmissible or insufficient." *Id.* at 242. The circumstances here are distinguishable from *Praytor* because the summary judgment order at issue in this case contains no comparable statement expressly addressing the competency of expert evidence proffered to establish causation. The trial court's order in this case recites as follows: "After considering the moving and opposition papers, arguments of counsel, and

In contrast to the circumstances listed above, an objection that expert testimony is too conclusory to support or defeat summary judgment is not waived by the failure to obtain a ruling in the trial court. *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.,* 252 S.W.3d 450, 457 n. 6 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997)). "An expert opinion is considered conclusory if it is essentially a 'conclusion without any explanation.'" *Pink,* 324 S.W.3d at 296–97 (quoting *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.,* 249 S.W.3d 380, 389 (Tex.2008)).

Roy's report states that "[t]he damages in this case are primarily based upon the complaints made in the Givens Report dated April 20, 2007 and the construction defects that have been identified in the case records." The Givens Report states that "the off grade concrete pier and wood beams foundation is found to have experienced differential movement of concern as evident by the significant unevenness in the floor elevation." It also states that "[a] number of the concrete piers are tilted out of plumb to an excess amount." The Givens Report further states that "[t]ilting of foundation support piers can be caused by a number of conditions" including "inadequate consideration for the design of the piers...."

Roy goes on to state as follows in his report:

> The foundation suffers from several factors. The first is the fact that several of the drilled piers are not intal[l]ed vertical as designed. Also the piers were drilled 12 feet deep instead of the 15 feet required by the design. Finally the framing I-beams placed above the drilled piers do not make proper contact with all of the piers because some of the piers are not located where they were designed to be.
>
> I have estimated what it would cost to repair the foundation problems, if in fact the foundation can ever be brought up to its designed capacity. The repair would require the placement of approximately 10 new piers and the added frame work to connect the new piers to the existing foundation. I estimate that this work could be done for about $25,000.00

We reject Foundation Design's and Smith's contention that Roy's expert damage evidence is conclusory with respect to necessary foundation repairs. Roy's estimate adequately links the stated cost to the installation of additional piers to address differential movement attributed to interrelated foundation problems.

## III. Fraud and Fraudulent Inducement

Barzoukas contends that the trial court erred by granting summary judgment on his fraud and fraudulent-inducement claims because he presented evidence raising a fact issue on each element of these claims.

When pursuing claims for fraud and fraudulent inducement, a plaintiff must establish that the defendant made a material misrepresentation. *See Amouri v. Sw. Toyota, Inc.,* 20 S.W.3d 165, 168 (Tex.App.-Texarkana 2000, pet. denied). Barzoukas's fraud claims are based on the allegation that, in a letter addressed to Heights Development, Smith misrepresented that hard clay stone impeded the piers

---

all other matter presented to the Court, the Court is of the opinion that Defendant's Motion is MERITORIOUS and should, in all things, be GRANTED." In contrast to the express language at issue in *Praytor,* this reci-

tation cannot be construed as an effective holding that the proffered expert testimony "was either inadmissible or insufficient." *See id.*

from being set at the required 15–foot depth and intended for Barzoukas and the City of Houston to rely upon this misrepresentation.

■ The letter, which was addressed only to Heights Development, contains the following statements:

At your request, an engineer from our firm has reviewed the information provided regarding the pier drilling operations at the above referenced residence. A representative of your firm notified us that during the drilling operations, clay was encountered. The foundation design (see LSE Job Number 2005–1038) specifies the piers to be 12″ in diameter, to extend 15 feet below grade and to be reinforced with one #5 bar. We were notified that hard clay stone was encountered at approximately 12′–0″. Due to the presence of hard clay stone, the pier depth shallowed to 12′–0″ with the reinforcement remaining at one #5 bar. This letter is to serve as an addendum to the plans and specifications with the changes noted above. If any pier holes cave, due to the presence of the clay, our office should be contacted for further recommendation.

We trust this is the information, which you require. If you have any questions regarding this, please feel free to contact us.

Barzoukas argues that Smith, as the foundation engineer for the project, was presenting the information in the letter as fact because he was authorizing a material reduction in pier depth. Barzoukas also contends that the letter was used by Heights Development to obtain city approval for the pier reduction.

Regardless of whether Smith intended that this letter would be submitted to the city, nothing in the letter supports an inference that Smith represented hard clay stone was discovered at twelve feet. Smith merely acknowledged that Heights Development made such a representation, and Smith approved a shallower pier depth based on this information. Barzoukas did not present evidence supporting an inference that Smith or Foundation Design made a purposeful misrepresentation. Accordingly, the trial court did not err by granting summary judgment in favor of Smith and Foundation Design on Barzoukas's fraud and fraudulent inducement claims. We overrule the portion of Barzoukas's sole issue as it pertains to his claims for fraud and fraudulent inducement.

CONCLUSION

We affirm the trial court's summary judgment with respect to fraud, fraudulent inducement, conspiracy, and exemplary damages. We reverse the trial court's summary judgment with respect to negligence and negligent misrepresentation, and remand for proceedings consistent with this opinion.

SEYMORE, J. concurring and dissenting.

CHARLES W. SEYMORE, Justice, concurring and dissenting.

I withdraw my concurring and dissenting opinion dated February 2, 2012 and issue this substitute concurring and dissenting opinion.[1]

I concur with the majority's holding that the record contains no evidence raising a fact issue regarding Barzoukas's claims for fraud and fraudulent inducement. However, I respectfully dissent from the majori-

1. I would grant appellees' motion for rehearing because I believe the economic loss rule bars appellant's negligence claims and the majority has improperly shifted the burden of proof to the parties moving for no-evidence summary judgment.

ty's reversal of summary judgment on Barzoukas's negligence claims because I believe (1) the economic loss rule forecloses his negligence claims against Smith and (2) Barzoukas failed to present evidence raising a fact issue relative to his negligence claims against Foundation Design.

## I. BACKGROUND

In September 2005, Barzoukas contracted with Heights Development, Ltd. ("HDL") to build a residential house in Harris County, Texas. Barzoukas specified that the house must be built on a pier-and-beam foundation. HDL retained Smith to design the foundation.[2] Smith designed the piers to extend fifteen feet below grade.

According to Barzoukas, Smith instructed the contractor to set the piers twelve feet below grade without informing Barzoukas. After the City of Houston refused to approve the house because of the pier reduction, Smith and HDL asserted that hard clay stone was discovered at twelve feet, preventing further drilling. Barzoukas claims the reduced piers rendered the foundation unstable and caused systemic damages to his house.

Barzoukas filed suit against HDL, Smith, and various other participants.[3] Barzoukas sued Smith for negligence, negligent misrepresentation, fraud, fraudulent

inducement, and conspiracy, and sought exemplary damages. Smith filed a no-evidence motion for summary judgment against Barzoukas on all of his claims. The trial court granted the motion without specifying the basis for its reasoning. The court later granted Barzoukas's motion to sever his claims from the underlying suit, thereby rendering the summary judgment a final judgment.

## II. STANDARD OF REVIEW

In a single issue, Barzoukas contends the trial court erred by granting summary judgment in favor of Smith on Barzoukas's claims for negligence, negligent misrepresentation, fraud, and fraudulent inducement.[4]

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex.2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact on elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A court sustains a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital

2. In the "Statement of Facts" section of Barzoukas's appellate brief, he made the following factual recitations: (1) Barzoukas contracted with HDL to build his house; and (2) "HDL retained Larry Smith, an engineer from the Dallas area, and various entities associated with him, to design the foundation of Barzoukas's house." Appellees did not contradict these statements. Under the Rules of Appellate Procedure, we must "accept as true the facts stated [by appellant in the "Statement of Facts" section of his brief] unless another party contradicts them." Tex. R.App. P. 38.1(g). This rule applies on appeal from a summary judgment. *See Choice v.*

*Gibbs*, 222 S.W.3d 832, 838 n. 6 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Accordingly, I accept as true that Barzoukas contracted with HDL to build the house, and HDL subcontracted with Smith to design the foundation.

3. With the exception of Smith and a defendant who filed bankruptcy, Barzoukas settled with all other defendants, including HDL.

4. As the majority notes, Barzoukas does not challenge the portion of the trial court's judgment pertaining to his claims for conspiracy and exemplary damages.

fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005). The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 115 (Tex.2009).

An appellate court reviews a summary judgment *de novo* and must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Mendoza v. Fiesta Mart,* 276 S.W.3d 653, 655 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). When a trial court does not specify the grounds for granting summary judgment, the appellate court must affirm the judgment if any ground is meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

## III. Negligence and Negligent Misrepresentation

Barzoukas argues that the trial court erred by granting summary judgment in favor of appellees on Barzoukas's claims for negligence and negligent misrepresentation.

In their motion for summary judgment, appellees argued that the economic loss rule precluded Barzoukas from raising a fact issue regarding the duty and breach elements of his negligence claims and also

generally argued as follows: "Barzoukas has no evidence of any of the essential elements listed above which are necessary to support such a claim of negligence, including without limitation no evidence of any duty or standard of care owed, breach of that duty, breach of that standard of care, economic damages to Barzoukas from that negligence, or proximate cause between the purported negligence and damages." Consequently, it was Barzoukas's burden as the nonmovant to present evidence raising a genuine issue of fact as to each of these elements. *Tamez,* 206 S.W.3d at 582.[5]

As an initial matter, I would conclude the trial court properly granted summary judgment relative to Barzoukas's negligence claims against Foundation Design. Although appellees challenged each negligence element in their no-evidence motion for summary judgment, Foundation Design is not referenced in any of the reports, letters, or other documents attached to Barzoukas's response. Thus, Barzoukas did not present evidence raising a fact issue regarding his negligence claims against Foundation Design. *See Tamez,* 206 S.W.3d at 582.

I next consider whether Barzoukas's negligence claims against Smith are barred under the economic loss rule.

### A. Economic Loss Rule

When a party breaches a contract and the only damage allegation amounts to economic loss to the subject matter of the contract, the action sounds solely in contract. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). The economic loss rule generally precludes recovery in negligence—including a claim for

---

5. This court has previously affirmed a trial court's order granting a no-evidence motion for summary judgment in which the movant argued there was no evidence relative to the nonmovant's negligence claims because the economic loss rule applied. *See Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

negligent misrepresentation—for economic losses resulting from failure of a defendant to perform under its contract. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex.2007); *Sterling Chem., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 797–98 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). In operation, the rule restricts contracting parties to remedies prescribed in their contract for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *Lamar Homes,* 242 S.W.3d at 12. Additionally, Texas courts have applied the economic loss rule to preclude negligence claims between parties who have no contractual relationship. *See Sterling Chem.,* 259 S.W.3d at 797.

**B. Analysis**

It is undisputed Barzoukas contracted with HDL to build a house, and HDL subcontracted with Smith to design the foundation.[6] Nevertheless, Barzoukas argues that the economic loss rule does not apply to bar his claims against Smith because there was no contractual privity between them, meaning the damages caused by Smith were not economic loss stemming from breach of contract. Barzoukas relies heavily on the Texarkana Court of Appeals's opinion in *Goose Creek Consolidated Independent School District of Chambers and Harris Counties, Texas v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486 (Tex.App.-Texarkana 2002, pet. denied).

Goose Creek Independent School District contracted with Lewis to construct three schools. *Id.* at 491. Lewis then subcontracted with Jarrar's Plumbing to install plumbing. *Id.* After the schools were occupied, plumbing defects were discovered. *Id.* The school district sued Lewis and later sued Jarrar's Plumbing for various causes of actions including negli-

gence. *Id.* 491–92. The school district alleged that Jarrar's Plumbing's negligence caused "the invasion of raw sewage and sewer gas into the school buildings, . . . caus[ing] portions of the buildings to be unusable at times." *Id.* at 495. The jury concluded Jarrar's Plumbing was negligent and awarded the school district damages for cost of repairs and loss of use. *Id.* at 492. The trial court denied Jarrar's Plumbing's motion for judgment notwithstanding the verdict based on an argument that the school district's negligence claim was barred under the economic loss rule. *Id.* at 493–94.

Acknowledging there was no contract between the school district and Jarrar's Plumbing, the court of appeals concluded the school district's negligence claim was not barred by the economic loss rule because it was "based on a breach of Jarrar's Plumbing's duty to all persons to use reasonable care not to injure persons or property in the performance of the contract." *Id.* at 494. The court further reasoned:

The acts [the school district] alleged may also have breached Jarrar's Plumbing's contract with Lewis. However, the injury [the school district] alleged, the invasion of sewage and sewer gas into the school buildings, constitutes an injury to property that was not the subject matter of the contract, that portion of the contract [the school district] had with Lewis for which Lewis contracted with Jarrar's Plumbing, namely the plumbing. Therefore, the injury alleged did not constitute pure economic loss for which [the school district] could recover only in contract.

*Id.* at 495; *see Thomson v. Espey Huston & Assocs. Inc.,* 899 S.W.2d 415, 417, 421–22 (Tex.App.-Austin 1995, no writ) (holding claim not barred by economic loss rule when (1) owner contracted with HWC to build apartment complex, (2) HWC sub-

---

**6.** See footnote 1, *supra.*

contracted with Espey to design drainage system and test soil quality, and (3) owner later sued Espey, alleging negligence in designing drainage system and testing soil quality caused damages to other parts of complex; damages alleged were beyond scope of contract between HWC and Espey); *see also Munters Euroform GmbH v. Am. Nat. Power, Inc.*, No. 03–05–00493–CV, 2009 WL 5150033, at *5–6 (Tex.App.-Austin Dec. 31, 2009, pet. dism'd) (mem. op.) (reaffirming *Thomson* holding by concluding that when owner sues subcontractor, application of economic loss rule is determined by subject matter of subcontract, not contract with general contractor).

Relying on *Goose Creek*, Barzoukas argues that the economic loss rule is inapplicable because the damages caused to his house were beyond the scope of HDL's foundation-design subcontract with Smith. Contrarily, Smith argues that the economic loss rule applies because the damages to Barzoukas's house are within the scope of Barzoukas's contract with HDL. Smith relies on the First Court of Appeals's opinion in *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

The Pughs contracted with Westbrook to build their house. *Id.* at 86. Westbrook subcontracted with RBS to apply veneer on the house. *Id.* General Terrazzo manufactured the veneer, instructed RBS regarding veneer application, and inspected RBS's work. *Id.* The Pughs later complained that the veneer had been improperly applied, causing moisture penetration and damage to the wood structure of the house and hardwood flooring. *Id.* at 86–87. Among other claims, the Pughs sued General Terrazzo for negligence (supplying incompatible, improperly manufactured veneer, and failing to supervise application and inspect completed work) and products liability (marketing without adequate instructions). *Id.* at 87. In its mo-

tion for summary judgment, General Terrazzo argued the Pughs' negligence claims were barred under the economic loss rule. *Id.* The Pughs responded that the doctrine was inapplicable because they sought damages beyond the scope of General Terrazzo's duties. *Id.* The trial court granted General Terrazzo's motion. *Id.* at 88–89.

The court of appeals acknowledged that courts have applied the economic loss rule in two contexts: (1) "to preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract"; and (2) "to preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or damage to 'other property.'" *Id.* at 90–91 (citations omitted). The court determined that both contexts applied to the Pughs' claims. *Id.* at 93–94. In regard to the first context, the court noted that the economic loss rule "has been applied to preclude tort claims between parties who are not in privity." *Id.* at 91. The court determined that the rule applied to bar the Pughs' claims, in part because their damages were limited to the house. *Id.* at 94. The court explained, "[A]lthough the Pughs were not in privity with General Terrazzo, their economic losses were the subject matter of their contract with Westbrook, and the Pughs have already obtained a judgment against Westbrook for their economic losses to their home." *Id.* at 94.

Barzoukas contends *Pugh* is inapplicable because that court was addressing a products-liability claim, whereas Barzoukas's claims are based on general negligence. Although the products-liability aspect of *Pugh* distinguishes it from the present case, I reiterate that the court's conclusion was based partially on the fact that the damages caused by misapplication of the veneer involved the Pughs' house, which

was the subject of the Pughs' contract with Westbrook. *Id.* Similarly, the damages caused by the allegedly defective foundation involve Barzoukas's house, which was the subject of his contract with HDL.[7]

Admittedly, the court in *Goose Creek* focused on the subject matter of the contract between the general contractor and the subcontractor—plumbing—and concluded the economic loss rule did not apply because the plaintiff's damages extended beyond plumbing. 74 S.W.3d at 495. However, I would apply the *Pugh* court's rationale and conclude that the economic loss rule applies when the plaintiff's damages are the subject matter of his contract with the general contractor, even if caused by the negligence of a subcontractor with whom the plaintiff is not in privity. *See*

243 S.W.3d at 91, 94; *cf. also Sterling Chem.*, 259 S.W.3d at 797–98 (holding claims barred by economic loss rule when (1) company contracted with PHS to build and operate gas-producing facility, (2) PHS entered into license agreement to use certain Texaco technology, (3) Texaco technology allegedly caused disruptions resulting in lost profits, and (4) company sued Texaco for negligent misrepresentation; no privity existed between company and Texaco but lost profits represented benefit-of-the-bargain damages addressed by company's contract with PHS).

I am persuaded to apply the *Pugh* court's rationale in order to preserve the risk allocations existing among the various parties involved in a construction project.[8] *See Pugh*, 243 S.W.3d at 94 (citing *Hou-*

---

7. I acknowledge that *Pugh* is also factually distinct from the present case because General Terrazzo was a manufacturer, whereas Smith is a subcontractor.

8. The majority concludes summary judgment was improper because the risk allocations accepted between the contracting parties are unknown. I agree that the contract between Barzoukas and HDL and the subcontract between HDL and Smith were not presented to the trial court relative to appellees' no-evidence motion for summary judgment. However, it is conclusively established that Barzoukas hired HDL to construct the house, and HDL subcontracted with Smith to design the foundation. After designing the foundation, Smith sent a letter to HDL in which he made the following recitations:

> At your request, an engineer from our firm has reviewed the information provided regarding the pier drilling operations at the above referenced residence [Barzoukas's house]. A representative of your firm notified us that during the drilling operations, clay was encountered.... Due to the presence of hard clay stone, the pier depth shallowed to 12′–0″.... This letter is to serve as an addendum to the plans and specifications with the changes noted above.... We trust this is the information, which you require.

Although the majority concludes it is unknown whether Smith made this addendum

pursuant to the terms of his subcontract with HDL, it is obvious the addendum was made pursuant to Smith's relationship with HDL— HDL informed Smith that a pier reduction occurred, and Smith amended the design plans accordingly. Plan modifications are common in construction projects, and I can conceive of no reason why the economic loss rule should not apply when the general contractor requests a subcontracted engineer to amend his designs. Each of the parties had the opportunity and prerogative to allocate risk of loss. Accordingly, the fact that we do not know how risks were actually allocated should not preclude application of the economic loss rule.

Additionally, I would affirm the trial court's summary judgment relative to Barzoukas's negligence claims because Barzoukas, as the nonmovant to a no-evidence motion for summary judgment, did not present evidence supporting an inference that the economic loss rule does not apply, *i.e.*, no evidence supports a finding that Smith committed negligence outside his role as subcontractor or that Barzoukas sustained damages unrelated to the subject matter of the prime contract. As noted in footnote 4, *supra*, our court previously affirmed a trial court's order granting a no-evidence motion in which the movant contended the nonmovant's negligence claims were precluded by the economic loss rule. *See Coastal Conduit*, 29 S.W.3d at 285.

*Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 106–07 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Hininger v. Case Corp.,* 23 F.3d 124, 126–27 (5th Cir. 1994)). In fact, when the Texas Supreme Court recently rejected the respondents' contention that allowing the petitioner to recovery in negligence would upset negotiated risk allocations, the court recognized that construction-defect cases "usually involve parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by [petitioner]." *See Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 420 (Tex.2011). With respect to this principle,

> [C]onstruction projects are multi-party transactions, but rarely is it the case that all or most of the parties involved in the project will be parties to the same document or documents. In fact, most construction transactions are documented in a series of two-party contracts, such as owner/architect, owner/contractor, and contractor/subcontractor. Nevertheless, the conduct of most construction projects contemplates a complex set of interrelationships, and respective rights and obligations.

Fundamentals of Construction Law 4–5 (Carina Y. Enhada et al., eds., 2001).

Barzoukas responds that concerns about risk allocations are moot in this situation because HDL and Smith acted in complicity. Specifically, Barzoukas contends HDL has no cognizable claim for breach of contract against Smith because they acted in concert to lower the pier depth. I would not create such an exception to the economic loss rule. Admittedly, by ratifying a subcontractor's negligence, a general contractor might waive its right to sue the subcontractor for breach of contract.

However, this concept affects only the risk allocation between the contractor and the subcontractor; the risk allocation between the property owner and the general contractor remains the same, i.e., the owner's recourse is against the general contractor, regardless of whether the general contractor has a cognizable breach-of-contract claim against the subcontractor. I recognize there may be situations in which an owner is unable to recover fully against the general contractor. Nevertheless, "[i]mplicit in the [economic loss rule] is the policy judgment that in a commercial context the possibility of an inadequate recovery ... does not justify permitting a tort recovery that will allow a purchaser to ... disrupt[ ] the risk allocations that have been worked out in the transaction comprising that chain." *Hou–Tex, Inc.,* 26 S.W.3d at 107 (quoting *Hininger,* 23 F.3d at 127). Similarly, the owner should not be permitted to disrupt established risk allocations by suing a subcontractor whose negligence was ratified by the general contractor when the owner's loss is the subject of his contract with the general contractor. Unless the subcontractor's negligence caused the owner damages beyond the subject matter of his contract with the general contractor, the owner's sole recourse is against the general contractor.

Several other sister state jurisdictions have concluded that the economic loss rule bars negligence claims against subcontractors in construction cases. For example, *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* involved facts very similar to those of the present case. 236 Va. 419, 374 S.E.2d 55 (1988). The plaintiffs were private individuals who contracted with a general contractor to construct a home

---

Moreover, the majority agrees that Barzoukas had the burden to raise a fact issue as the nonmovant of a no-evidence motion: "the economic loss rule's applicability in this case must be analyzed in 'no evidence' terms under Rule 166a(i)." *See Barzoukas v. Foundation Design, Ltd.,* No. 14–10–00505–CV (majority op.).

with a swimming pool. *Id.* at 56. The general contractor subcontracted with an architect to design the home and pool and a builder to construct the pool. *Id.* The plaintiffs sued both subcontractors, alleging that the pool was negligently designed and constructed, causing foundation damage to the house. *Id.* Answering a certified question from the federal court of appeals, the Supreme Court of Virginia concluded:

> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective—one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.
>
> Recovery in tort is available only when there is a breach of a duty "to take care for the *safety* of the person or property of another." ... [The subcontractors] assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law.

*Id.* at 58.

As an another example, in *Indianapolis–Marion County Public Library v. Charlier Clark & Linard, P.C.*, a county library contracted with an architect to re-

model a building, and the architect hired subcontractors to perform architectural and engineering services, including remodeling the basement-level garage of the building. 929 N.E.2d 722, 725 (Ind.2010). The library later filed negligence claims against the subcontractors, alleging that the defectively remodeled garage caused damages to the entire building. *Id.* at 725–26. The Supreme Court of Indiana determined that the economic loss rule barred the library's negligence claim because remodeling the garage was an integral part of whole project. *Id.* at 732. Although there was no contractual privity between the library and the subcontractors, the court recognized that the library was "connected [to the subcontractors] through a network or chain of contracts." *Id.* at 739; *see also, e.g., Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 20–26, 221 P.3d 234 (determining plaintiff's lack of privity with subcontractors and fact that defective roofs, foundations, and siding caused systemic damages to townhouses did not prevent application of economic loss rule); *Linden v. Cascade Stone Co., Inc.*, 2005 WI 113, ¶ 32, 283 Wis.2d 606, 627–28, 699 N.W.2d 189, 199–200 ("We conclude that when one contracts with a general contractor to build a house and the general contractor subcontracts with others to provide various services, the general contract controls whether the economic loss doctrine is available as a defense."); *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1267–70 (2000) (concluding economic loss rule barred residential homeowners' negligence claims against framing subcontractors for damages to whole house because defective framing was component of houses).[9] *But see, e.g., Flagstaff Afforda-*

**9.** After *Calloway,* the Nevada Legislature enacted a statute that authorizes residential homeowners to pursue negligence claims in residential construction defect cases. *See Ol-*

*son v. Richard,* 120 Nev. 240, 89 P.3d 31, 33 (2004) (interpreting Chapter 40 of Nevada Revised Statutes to authorize negligence

*ble Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 223 P.3d 664, 671–72 (2010) (concluding economic loss rule does not apply when plaintiff and defendant are not in contractual privity); *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 870 (Colo.2005) ("[T]he economic loss rule has no application to negligent residential construction claims against subcontractors because subcontractors owe homeowners an independent duty of care to act without negligence in the construction of homes.").

Generally, "[o]ne who undertakes to perform a contract assumes a duty to all persons to take reasonable care not to injure them or their property in the performance of that contract, and one who is not privy to the contract may assert a claim for negligence for a breach of that duty." *Wolf Hollow I, L.P. v. El Paso Marketing, L.P.*, 329 S.W.3d 628, 644 (Tex. App.-Houston [14th Dist.] 2010, pet. granted) (quoting *Goose Creek*, 74 S.W.3d at 494). However, I would recognize an exception to the rule when a subcontractor's negligence causes damages to the subject matter of the prime contract between the plaintiff and general contractor. Accordingly, I would hold that the economic loss rule bars Barzoukas's negligence claims against Smith and affirm the summary judgment against Barzoukas on these claims.